ORIGINAL

*Rec'd*
~~FILED~~
HARRISBURG. PA

MAY 0 2 2002

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FILED
HARRISBURG

MAY - 9 2002

MARY E. D'ANDREA, CLE
Per___
DEPUTY CLERK

| | | |
|---|---|---|
| WILLIAM E. BENNER, III, | : | CIVIL ACTION - LAW |
| Plaintiff | : | |
| | : | NO.: 1:CV-01-0909 |
| | : | |
| v. | : | [JUDGE KANE] |
| | : | |
| BRIDGESTONE/FIRESTONE, INC. | : | |
| Defendants | : | JURY TRIAL DEMANDED |

## AMENDED COMPLAINT

AND NOW, this 2nd day of May, 2002, Plaintiff William Benner, by and through his

counsel, Killian & Gephart, LLP, does hereby file this complaint and in support thereof

avers as follows:

### JURISDICTION

1.      This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331

(federal question). Plaintiff's claim arises under the Uniform Services Employment and Re-

Employment Rights Act. 38 U.S.C.S. § 4301 *et. seq.*

**PARTIES**

2.      Plaintiff, William Benner is an adult individual currently residing at R.R. 2, Box 278, Newport, Pennsylvania 17074 and at all times relevant hereto was a member of the 193 Special Operations Wing of the Pennsylvania Air National Guard of the United States Air Force.

3.      Defendant, Bridgestone/Firestone, Inc. is an Illinois corporation engaged in the business of tire sales and was at all times relevant hereto authorized to conduct business in the Commonwealth of Pennsylvania with a principal place of business located at 2550 West Golf Road, Rolling Meadows, Illinois 60008.

**FACTS**

4.      At all times relevant hereto, Defendant's agents, servants and/or employees were acting in the course and scope of their employment with Defendant.

5.      On or about April 1993, Plaintiff was hired by Defendant as a part-time employee.

6.      In May 1993, Plaintiff's National Guard Unit requested he participate in two exercises; Solid Stance 1993 for which Plaintiff would be deployed to the United Kingdom in September 1993 and Bright Star 1994 for which Plaintiff would be deployed to Egypt in November 1993 (federal fiscal year 1994).

7.      In May 1993, Plaintiff advised Defendant of the dates he would be deployed on the above referenced exercises.

2

8.     On or about May 30, 1993, Plaintiff became a full time employee of Defendant.

9.     By December 1993, Plaintiff had been promoted several times and had become manager of tire sales at Defendants' store located on Paxton Street in Harrisburg, Pennsylvania.

10.     Prior to deployment on the Bright Star exercise, Defendant through its agents, servants and/or employees, advised Plaintiff he could not join his guard unit during the mission.

11.     Defendant changed its position only after learning that this deployment fulfilled Plaintiff's 1994 fiscal year obligation and therefore allowed Plaintiff to deploy with his guard unit on the Bright Star exercise.

12.     Defendant through its agents, servants and/or employees advised Plaintiff that all future involvement with the guard must first meet with its approval and fit into its scheduling of employees in the operation of the store located on Paxton Street in Harrisburg, Pennsylvania.

13.     Plaintiff advised Defendant that he would cooperate as best he could but if his country needed him, he would have to accept his deployment orders and participate in the assigned exercise or operation.

3

14.    Plaintiff advised Defendant of his rights under the Uniform Services Employment and Re-employment Rights Act which are more fully outlined in this Complaint.

15.    At all times material hereto, Plaintiff performed all of his job duties and responsibilities in a competent manner.

16.    Plaintiff regularly exceeded his responsibilities in order to assist the successful operation of Defendant's store located on Paxton Street, Harrisburg Pennsylvania.

17.    Due to Plaintiff's efforts, the goals of the Paxton Street store were exceeded on a consistent basis.

18.    Typically, near the end of a month, Defendant would routinely request the Paxton Street store exceed its goals in tire sales, which was usually met due to the efforts of Plaintiff and the store team.

19.    Defendant through its agents, servants and/or employees advised Plaintiff that the primary qualification to gaining a promotion to the store manager position was to be the best manager of tire sales Plaintiff could be.

20.    Plaintiff satisfied this condition entitling him to a promotion to store manager.

21.    Prior to applying for store manager positions within Bridgestone/Firestone, Defendant through its agents, servants and/or employees informed Plaintiff that he had to make a decision whether to stay in the Air National Guard or become a store manager.

4

Defendant further advised Plaintiff that as long as he remained a member of the Air National Guard, he would not be promoted to the store manager position.

22.     In July 1994, Plaintiff was deployed with his guard unit to Alaska for a two week period. The Paxton Street store met its goal in tire unit sales which qualified Plaintiff as manager of tire sales for a bonus. Plaintiff submitted the paperwork necessary to obtain the bonus, however, Defendant denied his request since he was not present and working at the Paxton Street store during the entire month of July 1994.

23.     Prior to becoming a store manager, Defendant encouraged employees seeking this position to attend a preparatory course conducted by Defendant called SKUNK ("Skills Unknown"). The preparatory course is divided into two sections which are held at different times. Each section involves a multi-day instruction period.

24.     Plaintiff completed the first course but missed the second course since he was called to active duty.

25.     Plaintiff requested on numerous occasions to be rescheduled for the second part of the course but this request was denied by Defendant.

26.     Defendant through its agents, servants and/or employees informed Plaintiff he was not rescheduled because he would probably be called to active duty again and miss the course.

27.     In December 1994, Plaintiff applied for the vacant manager position for the store located at 700 North Second Street, Harrisburg, Pennsylvania.

5

28.     Plaintiff was not considered for the position despite having superior qualifications, including higher objectives and actual units sold than the other applicants, specifically Scott Gabriel, the individual that was ultimately hired for the store manager position.

29.     In October 1996, Plaintiff applied for the vacant manager position for Defendant's store located in York Pennsylvania.

30.     Plaintiff was not considered for the position despite having superior qualifications including higher objectives and actual units sold than the other applicants, specifically Rochelle Hartman, the individual that was ultimately hired for the store manager position.

31.     On or about September 9, 1997, Plaintiff was informed that he would be deployed with his guard unit to Italy to participate in the Operation of Joint Guard to assist in the enforcement of the Dayton Peace Accord. Plaintiff was scheduled to report for this assignment on September 12, 1997 at 12:00 p.m.

32.     Plaintiff immediately informed Defendant of his orders and stated he would work up to September 12, 1997 at 11:30 a.m.

33.     On or about September 12, 1997 at or about 11:00 a.m. Defendant through its agents, servants and/or employees informed Plaintiff he could not deploy with his unit to Italy.

6

34.    Defendant through its agents, servants and/or employees further informed Plaintiff if he did report for his assignment at 12:00 p.m. and deploy with his unit, Plaintiff would be fired and his position would be filled with another individual.

35.    In light of Defendant's illegal and improper actions, Plaintiff was able to have his orders rescinded and he did not deploy with his unit so as not to jeopardize his employment at Defendant.

36.    The remainder of Plaintiff's unit was deployed to Bosnia to perform their mission dangerously short handed.

37.    In April 1998, Plaintiff applied for the vacant manager position of Defendant's store located on 700 North Second Street, Harrisburg, Pennsylvania.

38.    In April 1998, Plaintiff was deployed with his guard unit to Kuwait in support of Operation Desert Thunder.  This deployment lasted until May 1998.

39.    Upon Plaintiff's return from his deployment in Kuwait, he was advised by Defendant that Mr. Kevin Hughes was promoted to store manager.

40.    Defendant through its agents, servants and/or employees informed Plaintiff that the decision was made to promote Mr. Hughes since Plaintiff was deployed in Kuwait and not present when the decision was made and that Defendant did not know when Plaintiff would return from his operation.

7

41.    On or about August 24, 1998, Plaintiff resigned his employment at Defendant since he would not be provided a promotion to store manager which Plaintiff had earned and deserved.

42.    Plaintiff resigned from his employment with Defendant in order to avoid the continual harassment for his Air National Guard service and to avoid termination by Defendant for pretextual reasons.

43.    During the course of his employment at Defendant, Plaintiff received numerous awards recognizing his accomplishments and competent work in assisting the successful operation of the Paxton Street store.

## UNIFORM SERVICES EMPLOYMENT AND
## RE-EMPLOYMENT RIGHTS ACT

44.    Plaintiff hereby incorporates paragraphs 1 through 42 as though fully set forth herein.

45.    A person who is a member of a uniformed service shall not be denied re-employment, retention in employment, promotion or any benefit of employment by an employer on the basis of that membership, performance of service, application for service or obligation.  38 U.S.C.S. § 4311(a).

46.    An employer shall be considered to have engaged in actions prohibited if the person's membership, service, application for service or obligation for service in uniformed services is a motivating factor in the employer's action.  38 U.S.C.S. § 4311(c)(1).

47.    Any person who is absent from a position of employment as necessitated by reason of service in the uniformed services shall be entitled to the re-employment rights and benefits and other employment benefits of USERRA if (1) the person has given advance written or verbal notice of such service to such person's employer; (2) the cumulative length of the absence and of all previous absences from a position of employment with that employer by reason of service and the uniformed services does not exceed five years; and (3) the person reports to, or submits an application for re-employment to, such employer. 38 U.S.C.S. § 4312(a).

48.    Plaintiff was a member of the Air National Guard during his employment with Defendant and has continued to be a member as of the filing of this Complaint.

49.    Prior to each deployment, Plaintiff provided his employer with notice of his military service obligations in a timely manner.

50.    The cumulative length of Plaintiff's absence from his employment at Defendant did not exceed five years.

51.    Upon his return from performing his military service obligations, Plaintiff returned to work with Defendant in a timely manner.  Defendant effectively discharged

9

Plaintiff within three months of his re-employment with Defendant in August 1998 by continually harassing Plaintiff for his military service in violation of 38 U.S.C.S. 4316(c)(1).

52.    Due to Defendant's unlawful actions and violations of USERRA, Plaintiff is entitled to lost wages from the date of his pretextual discharge of August 24, 1998 through the present time.

53.    In the alternative, due to Defendant's unlawful actions and violations of USERRA, Plaintiff is entitled to lost wages for a period of 9 months for being pretextually discharged three months after re-employment. 38 U.S.C.S. § 4316(c)(1).

54.    Defendant failed to promote plaintiff to the position of store manager due to his service in the Air National Guard.

55.    Due to Defendant's unlawful actions and violations of USERRA and denying Plaintiff a promotion to the store manager position which Plaintiff earned and deserved, Defendant is responsible for compensating Plaintiff the salary of a store manager from December 1994 through May 1999 or in the alternative, October 1996 through May 1999 or in the alternative, April 1998 through May 1999. 38 U.S.C.S. § 4323(c)(1)

56.    Due to Defendant's unlawful actions and willful violation of USERRA, Plaintiff is entitled to liquidated damages in the amount equal to the amount of loss wages sustained by Plaintiff as more fully outlined in paragraphs 46 and 48. 38 U.S.C.S. § 4323(c)(1)

57.    Due to Defendant's unlawful actions and willful violation of USERRA, Plaintiff is entitled to reasonable attorney's fees, expert witness fees and other expenses which Plaintiff may incur in this litigation.  38 U.S.C.S. § 4323(c)(2)

WHEREFORE, Plaintiff William Benner demands judgment in his favor and against Defendant, Bridgestone/Firestone, Inc. for damages as more fully outlined in this Complaint plus costs and fees and such other relief as this Court deems just and proper.

Respectfully submitted,

Michael J. O'Connor, Esquire
**Killian & Gephart**
218 Pine Street, P. O. Box 886
Harrisburg, PA 17108
(717) 232-1851
Attorney I. D. #76127

Dated: _May 2_, 2002

Attorneys for Plaintiff

11

## CERTIFICATE OF SERVICE

On this $2$ day of May, 2002, I hereby certify that I served the foregoing document

on the following by depositing a true and correct copy in the United States Mail, postage

prepaid, addressed to:

> Michael J. Ranallo, Esquire
> Holland & Knight, LLP
> 55 West Monroe Street, Suite 800
> Chicago, IL 60603

> KILLIAN & GEPHART

> Michael J. O'Connor, Esquire
> 218 Pine Street
> P. O. Box 886
> Harrisburg, PA  17108-0886
> (717) 232-1851